**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**Case No.:**

CEKETHA YARBROUGH,

Plaintiff,

v.

FRONTIER AIRLINES, INC.,

Defendant.
_____________________________________________/

**COMPLAINT AND DEMAND FOR A JURY TRIAL**

Plaintiff, CEKETHA YARBROUGH ("Plaintiff"), sues Defendant, FRONTIER AIRLINES, INC. ("Frontier"), under Titles I and V of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), and alleges:

## NATURE OF THE ACTION

1. This is an action for failure to provide a reasonable accommodation and for retaliation under the ADA. After a coworker's verbal assault left Plaintiff, a dedicated Flight Attendant with approximately twenty-five years of experience, with a severe mental health condition requiring ongoing treatment, she asked Frontier for a modest accommodation: an alternate parking space, or alternative transportation to the terminal, so that she would not be confined in an enclosed employee shuttle with

the coworker who assaulted her. Rather than engaging in the interactive process the ADA requires, Frontier denied the request less than twenty-four hours after acknowledging it, without asking a single question or exploring any alternative, and told her to seek help from the airport instead.

## PARTIES

2. Plaintiff is a resident of Brandon, Hillsborough County, Florida.

3. Plaintiff has been employed by Frontier as a Flight Attendant for approximately ten years and is based at Tampa International Airport ("TPA") in Hillsborough County, Florida.

4. At all material times, Plaintiff was an "employee" of Frontier within the meaning of 42 U.S.C. § 12111(4).

5. Frontier is a commercial airline headquartered in Denver, Colorado. Frontier conducts business in Florida and maintains a Flight Attendant crew base at TPA.

6. At all material times, Frontier was an "employer" and a "covered entity" within the meaning of 42 U.S.C. § 12111(2) and (5)(A), engaged in an industry affecting commerce, and employed more than 500 employees in each of twenty or more calendar weeks in the current or preceding calendar year.

## JURISDICTION, VENUE, AND DIVISION

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, and under 42 U.S.C. § 12117(a), which incorporates 42 U.S.C. § 2000e-5(f)(3).

8. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3), as incorporated by 42 U.S.C. § 12117(a), because the unlawful employment practices alleged were committed in this District, a substantial part of the events giving rise to the claims occurred in this District, and Plaintiff works in this District.

9. Under Local Rule 1.04(b), this action is properly filed in the Tampa Division because it is most directly connected to Hillsborough County, where Plaintiff resides, where she is based, and where the accommodation she requested would have been provided.

10. Frontier is subject to personal jurisdiction in Florida because it operates a crew base at TPA, employs Plaintiff in Florida, and committed the acts alleged in this Complaint in Florida.

## ADMINISTRATIVE PREREQUISITES

11. On or about September 3, 2026, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 511-2026-05026, dual-filed with the Florida Commission on Human

Relations. The Charge alleged disability discrimination, including Frontier's denial of her request for a parking space and its failure to engage with her to identify a suitable accommodation.

12. On September 9, 2026, the EEOC issued a Determination and Notice of Rights.

13. Plaintiff filed this action within ninety days of receiving the Notice of Rights.

14. Plaintiff's retaliation claim arises from the same accommodation request, denial, and refusal to engage described in the Charge, and it is like or related to, and grew out of, the allegations of the Charge.

15. All conditions precedent to this action have occurred, been performed, or been waived.

## GENERAL ALLEGATIONS

### A. Plaintiff's Employment

16. Frontier hired Plaintiff as a Flight Attendant approximately ten years ago. She has performed the essential functions of that position throughout her employment.

17. TPA-based Flight Attendants, including Plaintiff and Flight Attendant Kirk Mayer, travel between the terminal and the employee parking lot on an enclosed

employee shuttle bus. To report for and release from duty at TPA, Plaintiff must travel between the employee parking lot and the terminal.

**B. The June 9, 2026 Incident**

18. Before June 9, 2026, Mr. Mayer had repeatedly been confrontational and antagonistic toward Plaintiff.

19. On June 9, 2026, Plaintiff was assigned as the "B" Flight Attendant on Frontier Flight 3787 from Baltimore to Dallas–Fort Worth. Mr. Mayer was assigned as the "C" Flight Attendant.

20. At approximately 5:00 p.m., before passengers boarded, Plaintiff came to the forward galley and asked the lead "A" Flight Attendant, "Are we going to get a vacuum or are they going to board?" Mr. Mayer became aggressively hostile and yelled at her, "Don't you come up here with that shit about boarding! TAKE YOUR ASS TO THE BACK!"

21. When Plaintiff responded, "Don't you talk to me like that," Mr. Mayer turned to face her, aggressively shook his fingers in her face, and again yelled, "TAKE YOUR ASS TO THE BACK," and then, "I DON'T CARE, TAKE YOUR ASS TO THE BACK!"

22. The Captain, the First Officer, and the lead Flight Attendant were within earshot. None of them intervened. Plaintiff went to the back of the aircraft in shock, locked herself in the lavatory, and began calling for help.

23. From the lavatory, Plaintiff called the Captain to report Mr. Mayer's conduct. The Captain denied hearing it and instructed her to call her supervisor. Plaintiff called her supervisors, who did not answer, and a manager, without result. Crew scheduling told her that it could not do anything and directed her to call her supervisor. As Plaintiff came out of the lavatory to make her boarding announcement, the Captain called her back and proposed that Mr. Mayer remain in the forward galley. Unsure of her options, Plaintiff agreed, and the Captain said he would inform the lead Flight Attendant.

24. During the flight, Mr. Mayer nonetheless entered Plaintiff's aft galley, causing her to flee to the forward galley. He then came back to the forward galley, forcing her to flee again to the aft galley. Plaintiff felt trapped and afraid, with no way to leave the aircraft and no support from her coworkers, and was left feeling stuck emotionally, mentally, and physically.

25. On June 10, 2026, after the trip ended at TPA, Plaintiff hurried to catch the employee shuttle bus to her car. Although she boarded first, the shuttle waited for other crewmembers, and just as it was about to leave, Mr. Mayer boarded. Unable to exit the enclosed vehicle or distance herself from him, Plaintiff experienced severe anxiety. When the shuttle reached the employee parking lot, she hid behind a truck as Mr. Mayer walked toward the area where she had parked. He had parked near her vehicle, and she felt there was no escaping him.

26. Plaintiff submitted a written complaint dated June 19, 2026, describing Mr. Mayer's conduct and identifying each witness.

27. During Frontier's investigation, the lead Flight Attendant, David Reese, an eyewitness, provided a statement acknowledging that Mr. Mayer yelled at Plaintiff and acted disrespectfully and threateningly toward her. Mr. Mayer admitted his conduct.

28. On July 22, 2026, Frontier held a fact-finding meeting with Plaintiff concerning the June 9, 2026 incident. Supervisor Matthew DeMichieli conducted the meeting, which was attended by Manager Allan Blair, Supervisor Deirdre Grazia, human resources representative Marcia Attea, and a union representative. Plaintiff opened the meeting by telling them that she was traumatized by Mr. Mayer's attack.

29. Mr. DeMichieli acknowledged that he and Ms. Grazia had missed Plaintiff's call for help on June 9, 2026, and had not followed up. When he asked whether Plaintiff felt comfortable during the flight, she answered that she did not and explained why.

30. Frontier did not address her trauma. It characterized the incident as a "crew conflict." Mr. Blair questioned Plaintiff using Mr. Mayer's written statement. Ms. Grazia read aloud Mr. Mayer's belated apology letter and told Plaintiff to accept "the value of his apology now." Ms. Attea told Plaintiff that she and Mr. Mayer

"trigger each other," that she should "find common ground" with him, and that she needed to "own a piece of this."

31. To avoid Mr. Mayer, Plaintiff gave up her regular schedule and moved to reserve status. Within approximately two months, Mr. Mayer moved to reserve status as well.

32. Plaintiff invoked Frontier's "Do Not Pair" policy. Under that policy, the burden of separation falls on the junior Flight Attendant, who was Plaintiff, rather than on the employee whose conduct required the separation.

33. Upon information and belief, Frontier took no meaningful corrective or disciplinary action against Mr. Mayer for his conduct on June 9, 2026, or for disregarding the Captain's instruction that he remain in the forward galley, and he remained in his position without any change to his duties or schedule.

**C. Plaintiff's Disability**

34. As a result of the June 9, 2026 incident and its aftermath, Plaintiff developed a mental health condition for which she receives ongoing treatment from her therapist, a licensed mental health counselor.

35. Plaintiff's condition causes severe stress, fear, and anxiety, psychological and somatic trauma, fear for her physical safety, and a sense of being trapped when she is confined in an enclosed space with Mr. Mayer. Her therapist

has documented that the condition has made it difficult for her to resume work normally.

36. Before June 9, 2026, Plaintiff had a record of perfect attendance and had never taken leave under the Family and Medical Leave Act ("FMLA"). Since the incident, her condition has caused multiple absences from work and required her to request intermittent FMLA leave.

37. Plaintiff's condition is a mental impairment that substantially limits her in the major life activities of concentrating, thinking, and working, as well as in the major bodily function of brain function, as compared to most people in the general population.

38. Because of her condition, Plaintiff cannot safely ride the enclosed employee shuttle when Mr. Mayer is aboard. This limitation directly interferes with her ability to report for and release from duty at TPA.

39. Plaintiff has a disability within the meaning of 42 U.S.C. § 12102(1)(A). She also has a record of such an impairment within the meaning of 42 U.S.C. § 12102(1)(B).

40. With approximately twenty-five years of dedicated service as a Flight Attendant, Plaintiff has the skill, experience, and training for the position and can perform its essential functions with or without reasonable accommodation. She

remains employed by Frontier as a Flight Attendant and is a "qualified individual" within the meaning of 42 U.S.C. § 12111(8).

**D. Frontier's Knowledge of the Disability**

41. Before requesting an accommodation, Plaintiff provided Frontier with medical documentation of the effect the June 9, 2026 incident had on her health. Based on that documentation, Frontier approved Plaintiff for intermittent FMLA leave on July 20, 2026, two days before the fact-finding meeting.

**E. The Accommodation Request and Frontier's Denial**

42. On August 12, 2026, Plaintiff emailed Ms. Attea and Frontier's human resources team a written request titled "Formal Request: ADA Reasonable Accommodation Parking for Safe Workplace Access and terminal transportation." The request expressly invoked the ADA and asked Frontier to provide "alternate parking or safe, isolated transportation to and from the airport terminal" so that she would have no contact with Mr. Mayer.

43. In the request, Plaintiff explained that her "ongoing psychological and somatic trauma directly affects [her] ability to utilize standard employee parking," because riding in an enclosed, moving vehicle such as the employee shuttle, where Mr. Mayer may be present, triggers the trauma of being pursued by him through the aircraft cabin with no way out.

44. Plaintiff also told Frontier that her mental health counselor and clinical therapist had directed her to request parking assistance as an essential component of her ongoing medical care, so that she could safely return to duty.

45. Neither requested accommodation required Frontier to eliminate any essential function of the Flight Attendant position, alter any seniority right, displace any other employee, or change any bid, pairing, or schedule.

46. At 4:38 p.m. on August 12, 2026, Ms. Attea acknowledged receipt of the request by email and stated that she would respond when she had an answer. At 4:11 p.m. on August 13, 2026, less than twenty-four hours later, Frontier denied the request by email from "F9 HR Communications," signed by Ms. Attea. The email stated: "We looked into your request to acquire specialized parking at the airport. We cannot provide that to you as we do not have any jurisdiction to the parking lots at the airports. If you would like you can reach out to the airport to see if they have anything they can offer you."

47. Before denying the request, Frontier did not ask Plaintiff about her limitations, did not request additional medical information, did not discuss the request with her, and did not propose any alternative accommodation.

48. Her therapist later confirmed his recommendation in writing. His letter, which he corrected and finalized on September 4, 2026, states that Plaintiff's condition resulted from the June 9, 2026 incident and that she feels unsafe reentering

the workplace because she will likely share space with Mr. Mayer. It recommends an alternate parking space providing safe, direct access to the workplace or, alternatively, "alternative terminal transportation access to ensure that she is not forced into enclosed, unmonitored transit vehicles (such as employee shuttles or buses)" with Mr. Mayer.

49. Frontier did not provide either accommodation Plaintiff requested, did not propose any alternative, and did not engage with Plaintiff about her request. To date, Frontier has provided no accommodation.

50. Plaintiff did what Frontier told her to do. She contacted airport personnel on several occasions. Airport personnel told her that Frontier has additional parking available and referred her back to Frontier's manager.

51. Plaintiff also investigated paid parking near TPA, which was cost-prohibitive. On September 8, 2026, she applied for an airport volunteer position that includes free airport parking, in an effort to solve on her own a problem that the ADA required Frontier to address.

52. Upon information and belief, Frontier has access to parking at TPA for its employees and could have provided Plaintiff an alternate parking space.

53. Reasonable accommodations were available to Frontier, including: (a) an alternate parking space; (b) parking in the airport's cell phone lot; (c) leasing or paying for a parking space from the airport authority or its parking operator; (d)

reimbursing rideshare or taxi transportation between a separate lot and the terminal; (e) adjusting Plaintiff's report and release times so that she does not share the employee shuttle with Mr. Mayer; and (f) contacting the airport on Plaintiff's behalf.

54. Each of these accommodations would have enabled Plaintiff to access her workplace and to enjoy the same benefits and privileges of employment, including employee parking and terminal access, that Frontier provides to its other Flight Attendants. None would have imposed an undue hardship on Frontier.

55. Because Frontier refused to accommodate her, Plaintiff has been forced to rely on unpaid intermittent leave, resulting in lost wages and benefits, and has incurred out-of-pocket expenses and continuing emotional distress.

**F. Protected Activity and Frontier's Response**

56. Plaintiff engaged in activity protected by the ADA when she: (a) submitted her written request for a reasonable accommodation under the ADA on August 12, 2026; and (b) filed her Charge of Discrimination on or about September 3, 2026.

57. Frontier responded to Plaintiff's protected activity by: (a) rejecting her accommodation request within one day; (b) directing her to seek an accommodation from a third party, shifting to her an obligation the ADA places on Frontier; (c) continuing to refuse any accommodation, and any discussion of one, after receiving her Charge; and (d) continuing to apply its "Do Not Pair" policy so that Plaintiff,

rather than Mr. Mayer, bears the loss of schedule and pay required to keep them apart.

58. Frontier's actions followed Plaintiff's protected activity in close temporal proximity, beginning one day after her request.

59. Frontier's actions would dissuade a reasonable worker from requesting an accommodation or filing a charge of discrimination.

60. Frontier acted with malice or reckless indifference to Plaintiff's federally protected rights. Frontier did not make a good-faith effort, in consultation with Plaintiff, to identify and make a reasonable accommodation.

**COUNT I**

**FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA**

**(42 U.S.C. § 12112(a) and (b)(5)(A))**

61. Plaintiff realleges paragraphs 1 through 55 and paragraph 60 as if fully set forth in this Count.

62. Plaintiff has a disability within the meaning of 42 U.S.C. § 12102(1).

63. Plaintiff is a qualified individual who can perform the essential functions of the Flight Attendant position with or without reasonable accommodation.

64. Frontier knew of Plaintiff's disability and its limitations through the medical documentation she provided, its approval of her intermittent FMLA leave,

its fact-finding meeting with her, and her written accommodation request, which described her limitations and stated that her treating therapist had directed the request.

65. Plaintiff made a specific written request for a reasonable accommodation that identified two alternatives: alternate parking, or safe, isolated transportation to and from the terminal.

66. Reasonable accommodations were available, including those described in paragraph 53, and would not have imposed an undue hardship on Frontier.

67. Frontier failed to provide any reasonable accommodation, in violation of 42 U.S.C. § 12112(a) and (b)(5)(A). Frontier's refusal to engage in a good-faith interactive process caused its failure to identify and provide a reasonable accommodation.

68. Frontier's failure to accommodate adversely affected the terms, conditions, and privileges of Plaintiff's employment by forcing her onto unpaid leave and causing her to lose wages and benefits.

69. Frontier's conduct was intentional and was undertaken with malice or reckless indifference to Plaintiff's federally protected rights.

70. As a direct and proximate result of Frontier's violation, Plaintiff has suffered and continues to suffer lost wages and benefits, out-of-pocket expenses,

emotional distress, mental anguish, inconvenience, and loss of enjoyment of life, including the ability to travel using her flight benefits.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Frontier and award:

(a) back pay and lost benefits, including flight benefits, with prejudgment interest;

(b) compensatory damages for emotional distress, mental anguish, inconvenience, loss of enjoyment of life, and out-of-pocket expenses;

(c) punitive damages;

(d) reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 12205; and

(e) such other relief as the Court deems just and proper.

## COUNT II

## RETALIATION IN VIOLATION OF THE ADA

## (42 U.S.C. § 12203(a))

71. Plaintiff realleges paragraphs 1 through 60 as if fully set forth in this Count.

72. Plaintiff engaged in statutorily protected activity under 42 U.S.C. § 12203(a), as described in paragraph 56, including submitting a written

request for a reasonable accommodation under the ADA and filing a Charge of Discrimination.

73. Frontier knew of Plaintiff's protected activity.

74. Frontier subjected Plaintiff to materially adverse actions, as described in paragraph 57, that would dissuade a reasonable worker from making or supporting a charge of discrimination or requesting an accommodation.

75. Frontier took these actions because of Plaintiff's protected activity, as shown by their close temporal proximity to that activity and by Frontier's refusal to engage with her after each protected act.

76. As a direct and proximate result of Frontier's retaliation, Plaintiff has suffered and continues to suffer lost wages and benefits, out-of-pocket expenses, emotional distress, mental anguish, inconvenience, and loss of enjoyment of life, including the ability to travel using her flight benefits.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Frontier and award:

(a) back pay and lost benefits, including flight benefits, with prejudgment interest;

(b) front pay or other equitable relief to make her whole;

(c) compensatory and punitive damages to the extent permitted by law;

(d) reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 12205; and

(e) such other relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Under Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: November 8, 2026.

Respectfully submitted,

/s/ Jay F. Romano
Jay F. Romano, Esq.
Florida Bar No. 0934097
**Lead Counsel for Plaintiff**
DISCRIMINATION LAW, P.A.
433 Plaza Real, Suite 275
Boca Raton, Florida 33432
Telephone: (561) 271-1769
Email: jromanopa@gmail.com